IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. _____ |
| v. | : | DATE FILED: _____ |
| ANGEL ROBERTO SERRANO, JR., a/k/a "Fly," ANGELA M. SERRANO | : | VIOLATIONS: 18 U.S.C. § 371 (conspiracy to suborn perjury and tamper with a witness - 1 count) |
| | : | 18 U.S.C. § 1512(b)(1) (tampering with a witness - 5 counts) |
| | : | 18 U.S.C. § 2 (aiding and abetting) |

**INDICTMENT**

**COUNT ONE**

**THE GRAND JURY CHARGES THAT:**

**INTRODUCTION**

1.  On or about March 12, 2007, defendant ANGEL ROBERTO SERRANO, JR., a/k/a "Fly" (ANGEL SERRANO) was charged in a state criminal complaint with criminal attempted homicide, criminal conspiracy to commit criminal homicide, aggravated assault, and related charges, as a result of a shooting incident that occurred on or about January 4, 2007 in the City of Lancaster, in the Eastern District of Pennsylvania (the January 4, 2007 shooting incident). On or about September 24, 2007, defendant ANGEL SERRANO was formally arrested on this criminal complaint.

2.  On or about February 6, 2007, a federal grand jury investigation was initiated to determine whether defendant ANGEL SERRANO was involved in the January 4, 2007 shooting incident, whether that shooting involved a dispute between rival drug gangs in

1

Lancaster and elsewhere, and whether the shooting and suspected gang dispute violated federal criminal laws, including but not limited to Title 21, United States Code, Section 846 (conspiracy to distribute narcotics); and Title 18, United States Code, Section 924(c)(carrying and using a firearm in furtherance of a drug trafficking crime)..

## THE CONSPIRACY

3. From at least on or about February 5, 2008, up to and including on or about August 18, 2008, in the Eastern District of Pennsylvania and elsewhere, defendants

**ANGEL ROBERTO SERRANO, JR.,**
**a/k/a "Fly," and**
**ANGELA M. SERRANO**

conspired and agreed together to commit the following offenses against the United States: (1) to knowingly suborn the perjury of B.W., a person known to the grand jury, before the federal grand jury with respect to matters that were material to the federal grand jury, in violation of Title 18, United States Code, Section 1622; and (2) to knowingly corruptly persuade B.W. with intent to influence the testimony of B.W. in an official proceeding, that is, the federal grand jury for the Eastern District of Pennsylvania, in violation of Title 18, United States Code, Section 1512(b)(1).

## MANNER AND MEANS

It was part of the conspiracy:

4. Defendants ANGEL ROBERTO SERRANO, JR. and ANGELA M. SERRANO devised a plan to obstruct justice to impede the federal grand jury investigation into the January 4, 2007 shooting incident in an effort to make it appear that defendant ANGEL SERRANO was not responsible and had no involvement in the shooting.

5. To carry out this plan, defendants ANGEL SERRANO and ANGELA SERRANO attempted to suborn the perjury of and corruptly persuade B.W. to provide a false alibi in her testimony before the federal grand jury concerning the whereabouts and actions of defendant ANGEL SERRANO on January 4, 2007. Defendants ANGEL SERRANO and ANGELA SERRANO specifically attempted to convince B.W. to testify falsely before the federal grand jury that defendant ANGEL ROBERTO SERRANO, JR. was with B.W. at another location when the shooting took place, when, in fact, they were not together..

## BACKGROUND

6. Within days of the shooting on January 4, 2007, defendant ANGEL ROBERTO SERRANO, JR. fled to the State of Florida.

## The October 5, 2007 Letter

7. Between on or about October 5, 2007, and on or about November 30, 2007, defendant ANGEL SERRANO provided defendant ANGELA SERRANO with a letter postmarked October 5, 2007, providing B.W. with specific false instructions and information about when defendant ANGEL SERRANO and B.W. got together on January 4, 2007. He also told B.W. that she should remember that day because it was the date of the funeral for ANGEL SERRANO's uncle. He also told B.W. not to let the police confuse her, stating, "When it comes time 2 tell ur side of the story, don't let no-one confuse you or try 2 make you contridict urself. They'll try to pick at ur story N poke holes in it. Stay strong N focused. K-Boo. I love you. I can't really talk over them phones to you because some-one some-where is listening + recording + I don't need no-one mixen up what I said (Feel me?) You know what's up..."

8. At the direction of defendant ANGEL SERRANO, defendant

3

ANGELA SERRANO provided the October 7, 2007 letter to B.W. so that B.W. could read and become familiar with the false information that defendant ANGEL SERRANO wanted B.W. to testify about at his state court trial.

### The October 15, 2007 Letter

9. Between on or about October 15, 2007, and on or about November 30, 2007, defendant ANGEL SERRANO provided defendant ANGELA SERRANO with a letter postmarked October 15, 2007, falsely outlining specific times and places that defendant ANGEL SERRANO and B.W. had been together on January 4, 2007, all of which information was untrue.

10. At the direction of defendant ANGEL SERRANO, defendant ANGELA SERRANO provided the October 15, 2007 letter to B.W. so that B.W. could read and become familiar with the false information that defendant ANGEL SERRANO wanted B.W. to testify about at his state court trial.

11. In or about July, 2007, in order to continue to influence B.W., at the urging of defendant ANGEL SERRANO, defendant ANGELA SERRANO got B.W. a job at the same company for which defendant ANGELA SERRANO was working. In order to facilitate the hiring of B.W., defendant ANGELA SERRANO told her work supervisor that she knew B.W. well, when, in fact, she did not.

12. Between in or about July, 2007, and in or about November, 2007, at the urging of defendant ANGEL ROBERTO SERRANO, JR., defendant ANGELA M. SERRANO repeatedly discussed the January 4, 2007 shooting case with B.W. During these discussions, defendant ANGELA M. SERRANO repeatedly and falsely told B.W. that she knew for a fact

that defendant ANGEL ROBERTO SERRANO, JR. had not been involved in the shooting because she had been in the area at the time of the shooting, and had seen the two men who had done it.

        13.     Between on or about April 6, 2007, and on or about February 4, 2008, in an effort to ensure that B.W. would provide false testimony at his state court trial, defendant ANGEL SERRANO repeatedly made statements to B.W. in person, during telephone conversations, and via letters, that he was going to marry B.W., even though defendant ANGEL SERRANO had no intention of doing so.

**OVERT ACTS**

In furtherance of the conspiracy, defendants ANGEL ROBERTO SERRANO, JR. and ANGELA M. SERRANO committed the following overt acts, among others, in the Eastern District of Pennsylvania, and elsewhere:

1. From at least on or about February 5, 2008, to on or about August 18, 2008, defendants ANGEL SERRANO and ANGELA SERRANO discussed a plan to obstruct justice by convincing B.W., a person known to the grand jury, to commit perjury before the federal grand jury.

2. Between on or about February 5, 2008, and on or about June 10, 2008, in an effort to ensure that B.W. would provide false testimony before the federal grand jury, defendant ANGEL SERRANO repeatedly made statements to B.W., during telephone conversations, and via letters, that he was going to marry B.W., even though defendant ANGEL SERRANO, JR. had no intention of doing so.

3. During a telephone conversation on or about February 7, 2008, Defendants ANGEL SERRANO and ANGELA SERRANO discussed having both B.W. and defendant ANGELA SERRANO telling the attorney for defendant ANGEL SERRANO that he was with B.W. almost the entire day of January 4, 2007.  The defendants also discussed the need to get B.W.'s "mind clear" about defendant ANGEL SERRANO's reason for traveling to Florida to see another girlfriend, and his reason for going to Clearfield to have sex with a third girlfriend.

4. During a telephone conversation on or about February 11, 2008, defendants ANGEL SERRANO and ANGELA SERRANO discussed that B.W. was concerned that she would not remember the exact times that she needed to remember.  Defendant ANGEL

SERRANO told defendant ANGELA SERRANO that he told B.W., "As long as you know that you were with me the whole entire day from 10-11 o'clock in the afternoon/morning time until...9-10 at night.  It don't matter like what time we went to my sister's.  As long as you remember we went there around dinner to get some cigarettes.  I needed cigarettes."

        5.     During a telephone conversation on or about February 12, 2008, defendant ANGEL SERRANO and B.W. discussed the fact that defendant ANGELA SERRANO had testified before the federal grand jury earlier that day.  Defendant ANGEL SERRANO repeatedly instructed B.W. to speak with defendant ANGELA SERRANO as soon as possible so that B.W. knew what to say when the police came to interview her.  Defendant ANGEL SERRANO also instructed B.W. that although it would be difficult for her to remember times when she was interviewed by the police, "as long as you know that I was with you from early that morning, like ten or eleven till like ten o'clock at night."  Additionally, defendant ANGEL SERRANO instructed B.W. that if the police asked her about him suddenly leaving to go to Florida, and whether she knew ahead of time that he was going to do so, she should tell them "Yeah, I knew about it ever since we met.  He told me that he would be going to Florida probably early January to visit his ex-girlfriend that he was with for mad years.  So I knew about this."  In fact, to the contrary, defendant ANGEL SERRANO did not actually tell B.W. that he was going to Florida until the day that he actually left.

        6.     During a telephone conversation on or about February 17, 2008, defendants ANGEL SERRANO and ANGELA SERRANO discussed her testimony before the grand jury in Philadelphia.  Defendant ANGEL SERRANO asked defendant ANGELA SERRANO whether she had spoken with B.W. lately, and when defendant ANGELA

SERRANO stated that she had, defendant ANGEL SERRANO told her, "Call her...and find out like, what's up."

       7.     During a telephone conversation on or about February 19, 2008, defendants ANGEL SERRANO and ANGELA SERRANO discussed that B.W. had testified before the federal grand jury earlier that day.  Defendant ANGELA SERRANO informed defendant ANGEL SERRANO that she had just gotten off of the phone with B.W., and that "Everything went fine."  Defendant ANGELA SERRANO told defendant ANGEL SERRANO, "I was so worried," and described her unsuccessful attempts to arrange to drive B.W. to Philadelphia, rather than letting the detectives transport her to the grand jury.  She also told defendant ANGEL SERRANO that she had told B.W. that she "doesn't have to answer any more of their questions, not to answer shit."  Additionally, the defendants discussed how each of them had instructed B.W. that she could not get mad when the police confronted her with the fact that defendant ANGEL SERRANO had gone to Florida to see his ex-girlfriend, when he was supposed to be going out with B.W.

       8.     During a telephone conversation on or about February 19, 2008, defendant ANGEL SERRANO and B.W. discussed the recent interview of B.W. by the Lancaster City police detectives.  When defendant ANGEL SERRANO asked B.W., "Like, did you tell them everything?  Like as far as we were together the whole day and how you took me, well I was driving took me to go get smoke and everything?"  B.W. responded that she had done so. Later on in the same conversation, defendant ANGEL SERRANO told B.W., "...you were the main one I was like worried about because you were the one I was with that day."  Defendant ANGEL SERRANO then told B.W., "I hope it's over.  And I hope like just, just understand that

what you did today like probably like was a, a lot of what needed to be done because you're the only one that really can free me of my charges. Because you're the only one I was with that day. I mean I was. I, I seen Angela a couple times that day...Like you're the only one that actually could have. You know what I mean?....So just understand that even though your parents are probably upset, you did the right thing. And don't argue with your family about me. Like when I come home and you're happy and we're married and we have...a family and they want to meet your husband. They'll accept me, babe. Just understand that....You do still want to be my wife, right?"

        9.      Between on or about February 19, 2008, and on or about June 10, 2008, defendant ANGEL SERRANO sent B.W. a letter postmarked February 19, 2008, instructing B.W. that "When it comes down 2 it, make sure you <u>stay strong</u> + keep <u>fully</u> focused on <u>us</u>. The police are funny + will try 2 confuse you. Oh + Boo, their gonna ask if you sent me $ while I was in FL. Tell them the truth. I was trying to get a bus ticket/<u>way</u> back home b-cause me and my ex- started fighting + she was acting up...(I know you understand that babe) that's just 4- the justice (Feel-Me) Pls. Not 4-one freaken second question my love or allowe any-one 2- paint a messed up mental picture that will throw you off track. You know I did <u>not</u> do this crime as well as you know <u>I Love You</u> W/ <u>All</u> my heart." Defendant ANGEL SERRANO also wrote to B.W., "Did any detectives or police try 2- talk 2- you? It's getting down 2- crunch time where they want to break me + will use any means necessary 2-do so, including harass my baby girl (you)."

        10.     During a telephone conversation on or about February 25, 2008,

defendants ANGEL SERRANO and ANGELA SERRANO discussed "J," a woman who was corresponding with defendant ANGEL SERRANO and who was interested in a sexual relationship with him.  Defendant ANGEL SERRANO told defendant ANGELA SERRANO that he had B.W. give a message to "J," and defendant ANGELA SERRANO told defendant ANGEL SERRANO, "Like, do not fuck shit up with (B.W.)."  Defendant ANGEL SERRANO responded that he had explained the situation to "J," telling her, "listen, you can't ever like come at (B.W.) in no type way because she is my alibi."

    11. During a telephone conversation on or about May 29, 2008, defendants ANGEL SERRANO and ANGELA SERRANO discussed the fact that defendant ANGELA SERRANO had been unable to reach B.W. by telephone.  Defendant ANGEL SERRANO responded by stating, "Yo, cause she's trippin' right.  Check this out.  It's been a month straight.  I ain't get no letter, she didn't come visit and every time, like "J" even tried to call her on the strength of like, my case is comin' up and I, I don't know what's going on with her.  Like this is the worst time for this shit to be happening."  Defendant ANGEL SERRANO then told defendant ANGELA SERRANO "I'm cool but, just, I need her to, you know what I'm sayin' not switch up on me at this time right now."

    All in violation of Title 18, United States Code, Section 371.

## COUNT TWO

**THE GRAND JURY FURTHER CHARGES THAT:**

  1.  Paragraphs 1, 2 and 4 and 5, and Overt Acts 1 and 2 of Count One of this indictment are incorporated here.

  2.  Between on or about February 5, 2008, and on or about June 10, 2008 in the Eastern District of Pennsylvania, defendants

**ANGEL ROBERTO SERRANO, JR.**
a/k/a "Fly," and
**ANGELA M. SERRANO**

knowingly corruptly persuaded and attempted to corruptly persuade, and aided and abetted the corrupt persuasion and attempt to corruptly persuade, another person, B.W., known to the grand jury, with intent to influence the testimony of B.W. in an official proceeding, that is, the federal grand jury in the Eastern District of Pennsylvania which was investigating potential violations of Title 18, United States Code, § 924(c)(carrying and using of a firearm in furtherance of a drug trafficking crime) and Title 21, United States Code, Section 846 (drug conspiracy).

  In violation of Title 18, United States Code, Sections 1512(b)(1) and 2.

## COUNT THREE

**THE GRAND JURY FURTHER CHARGES THAT:**

      1.      Paragraphs 1, 2, 4, and 5, and Overt Acts 1 and 5 of Count One of this indictment are incorporated here.

      2.      On or about February 12, 2008, in the Eastern District of Pennsylvania, defendants

**ANGEL ROBERTO SERRANO, JR.**
**a/k/a "Fly," and**
**ANGELA M. SERRANO**

knowingly corruptly persuaded and attempted to corruptly persuade, and aided and abetted the corrupt persuasion and attempt to corruptly persuade, another person, B.W., known to the grand jury, with intent to influence the testimony of B.W. in an official proceeding, that is, the federal grand jury in the Eastern District of Pennsylvania which was investigating potential violations of Title 18, United States Code, § 924(c)(carrying and using a firearm in furtherance of a drug trafficking crime) and Title 21, United States Code, Section 846 (drug conspiracy).

      In violation of Title 18, United States Code, Sections 1512(b)(1) and 2.

## COUNT FOUR

**THE GRAND JURY FURTHER CHARGES THAT:**

  1.  Paragraphs 1, 2 and 4 and 5, and Overt Acts 1 and 7 of Count One of this indictment are incorporated here.

  2.  On or about February 19, 2008, in the Eastern District of Pennsylvania, defendants

<b>ANGEL ROBERTO SERRANO, JR.<br>a/k/a "Fly," and<br>ANGELA M. SERRANO</b>

knowingly corruptly persuaded and attempted to corruptly persuade, and aided and abetted the corrupt persuasion and attempt to corruptly persuade, another person, B.W., known to the grand jury, with intent to influence the testimony of B.W. in an official proceeding, that is, the federal grand jury in the Eastern District of Pennsylvania which was investigating potential violations of Title 18, United States Code, § 924(c)(carrying and using of a firearm in furtherance of a drug trafficking crime) and Title 21, United States Code, Section 846 (drug conspiracy).

  In violation of Title 18, United States Code, Sections 1512(b)(1) and 2.

## COUNT FIVE

**THE GRAND JURY FURTHER CHARGES THAT:**

      1.    Paragraphs 1, 2 and 4 and 5, and Overt Acts 1 and 8 of Count One of this indictment are incorporated here.

      2.    On or about February 19, 2008, in the Eastern District of Pennsylvania, defendants

**ANGEL ROBERTO SERRANO, JR.**
a/k/a "Fly," and
**ANGELA M. SERRANO**

knowingly corruptly persuaded and attempted to corruptly persuade, and aided and abetted the corrupt persuasion and attempt to corruptly persuade, another person, B.W., known to the grand jury, with intent to influence the testimony of B.W. in an official proceeding, that is, the federal grand jury in the Eastern District of Pennsylvania which was investigating potential violations of Title 18, United States Code, § 924(c)(carrying and using of a firearm in furtherance of a drug trafficking crime) and Title 21, United States Code, Section 846 (drug conspiracy).

      In violation of Title 18, United States Code, Sections 1512(b)(1) and 2.

## COUNT SIX

**THE GRAND JURY FURTHER CHARGES THAT:**

1. Paragraphs 1,2 and 4 and 5, and Overt Acts 1 and 9 of Count One of this indictment are incorporated here.

2. Between on or about February 19, 2008, and on or about June 10, 2008 in the Eastern District of Pennsylvania, defendants

**ANGEL ROBERTO SERRANO, JR.**
**a/k/a "Fly," and**
**ANGELA M. SERRANO**

knowingly corruptly persuaded and attempted to corruptly persuade, and aided and abetted the corrupt persuasion and attempt to corruptly persuade, another person, B.W., known to the grand jury, with intent to influence the testimony of B.W. in an official proceeding, that is, the federal grand jury in the Eastern District of Pennsylvania which was investigating potential violations of Title 18, United States Code, § 924(c)(carrying and using of a firearm in furtherance of a drug trafficking crime) and Title 21, United States Code, Section 846 (drug conspiracy).

In violation of Title 18, United States Code, Sections 1512(b)(1) and 2.

**A TRUE BILL:**

**FOREPERSON**

**LAURIE MAGID**
**Acting United States Attorney**