starks motion (motion to admit tape recordings) - prison tapes
7/2007

# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Crim. Nos. 08-485; 08-601** |
| | : | |
| **ANGEL ROBERTO SERRANO, JR.** | : | |
| **A/ka/ "Fly,"** | : | |
| **ANGELA M. SERRANO** | : | |
| **LISA M. SERRANO** | : | |

## O R D E R

AND NOW,   this       day of May, 2009, upon consideration of the government's

motion to admit the recordings of conversations between the defendants and other individuals, on

various dates between February, 2007 and the present date, the Court finds the following as to the

recordings and accompanying transcripts:

1.  The recording devices used were capable of recording accurately the

conversations;

2.  The operator of the recording device was competent;

3.  The recording is authentic and correct;

4.  There have been no changes in, additions to, or deletions from the recordings;

5.  The recording has been properly preserved;

6.  The speakers on the recordings, defendants Angel Roberto Serrano, Jr., Angela

M. Serrano, and Lisa M. Serrano, are properly identified, as reflected in the transcripts;

7.  The recording of the conversations by officials of the Lancaster County Prison

was not within the meaning of "interception" under Title 18, U.S.C. Section 2510(5)(a)(ii) (the

Federal Wiretap Act) and/or the defendants consented to the recording of the conversations; and

        8.  The transcripts of the recordings accurately represent the conversations on the recordings and accurately identify one or more of the defendants as a party to each recorded conversation.

        BY THE COURT:


_____
HONORABLE LEGROME D. DAVIS
*United States District Judge*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | **Crim. Nos. 08-485; 08-601** |
| | : | |
| **ANGEL ROBERTO SERRANO, JR.** | : | |
| A/ka/ "Fly," | : | |
| **ANGELA M. SERRANO** | : | |
| **LISA M. SERRANO** | : | |

## GOVERNMENT'S MOTION TO ADMIT PHONE CALL RECORDINGS

The United States of America, by its attorneys, Laurie Magid, United States Attorney for the Eastern District of Pennsylvania, and Mark S. Miller, Assistant United States Attorney for the District, hereby moves for the admission at trial of phone call recordings pursuant to Fed. R. Evid. 104 and 901 (authentication), and in support of this motion states as follows:

1.  Defendants Angel Roberto Serrano, Jr., and Angela M. Serrano are charged in a six-count indictment with violating Title 18, United States Code, Section 371 (conspiracy to suborn perjury and tamper with a witness)(1 count); and Title 18, United States Code, Sections 1512(b)(1) and 2 (tampering with a witness, and aiding and abetting)(5 counts). Defendants Angela M. Serrano and Lisa M. Serrano are charged in a twelve-count indictment with violating Title 18, United States Code, Section 371 (conspiracy to suborn perjury and tamper with a witness)(1 count); Title 18, United States Code, Section 371 (conspiracy to commit perjury before the federal grand jury)(1 count); Title 18, United States Code, Sections 1622 and 2 (subornation of perjury and aiding and abetting)(1 count); Title 18, United States Code, Sections

1512(b)(1) and 2 (tampering with a witness, and aiding and abetting)(1 count); and Title 18, United States Code, Section 1623 (perjury before the federal grand jury)(4 counts each).

2.   The government alleges that on January 4. 2007, in the area of Andrew Street and Beaver Street, in the City of Lancaster, Pennsylvania, seven year-old Brianna Pratt was shot and seriously injured.   Three men, including defendant Angel Roberto Serrano, Jr., were eventually charged in state court for their respective roles in the shooting incident.  On November 14, 2008, defendant Angel Roberto Serrano, Jr., was convicted of criminal conspiracy at criminal homicide, criminal conspiracy at aggravated assault, and two counts of recklessly endangering another person, following a jury trial in the Court of Common Pleas of Lancaster County.

3.   Defendant Angel Roberto Serrano, Jr. was arrested on felony drug charges in Tampa, Florida, in February, 2007.  He was subsequently arrested with respect to the Lancaster shooting incident, and extradited to Pennsylvania.

4.   On or about February 6, 2007, a federal grand jury began hearing evidence concerning the Pratt shooting, in an effort to determine whether the shooting involved violations of federal law.  During the pendency of the grand jury proceedings, numerous witnesses, including defendants Angela M. Serrano and Lisa M. Serrano, were called to testify concerning their knowledge of the events surrounding the shooting incident, and the actions of the three men involved, after the shooting had occurred.

5.   As a result of her testimony before the grand jury, and the testimony of other witnesses, defendant Angela M. Serrano was indicted along with her brother, defendant Angel Serrano, for conspiracy to suborn perjury and tamper with a witness, and tampering with a witness (5 counts) and aiding and abetting, with respect to witness Brittany Walter.  Additionally,

2

defendant Angela M. Serrano was indicted along with her sister, defendant Lisa M. Serrano, for conspiracy to suborn perjury and tamper with a witness, subornation of perjury, and tampering with a witness, with respect to witness Glenn Kramer, the stepfather of the three defendants. Defendants Angela M. Serrano and Lisa M. Serrano were also charged with conspiracy to commit perjury before the federal grand jury, as well as a total of eight (four each) substantive counts of perjury before the federal grand jury.  The substantive perjury counts focused on, *inter alia*, when the defendants first became aware of the shooting incident, and how; how defendant Angel Serrano paid for his trip to the state of Florida following the shooting incident; defendant Angel Serrano's parole and home plan status on the date of and following the shooting; exactly when defendants Angela M. Serrano and Lisa M. Serrano first discussed the shooting incident with Angel Roberto Serrano, Jr.

        6.  Defendant Angel Roberto Serrano, Jr. was arrested on charges of criminal conspiracy at homicide, and related charges locally in Lancaster County, and was "held for court" after a preliminary hearing.   Thereafter, while defendant Angel Roberto Serrano, Jr. was awaiting trial on his local charges, all three defendants were indicted by the federal grand jury on September 30, 2008.   While facing his local charges, the defendant was held at the Lancaster County Prison.   The defendant remained in local custody there from the time of his extradition from the State of Florida until he was brought into federal custody and transferred to the FDC-Philadelphia to await trial on his federal charges.

        5.  During the course of this case, the government obtained recordings of numerous telephone conversations between (a) defendants Angel Roberto Serrano, Jr. and Angela M. Serrano; (b) defendant Angel Roberto Serrano, Jr. and witness Brittany Walter; and

3

(c) defendant Angel Roberto Serrano, Jr. and Tara Ortiz.  These phone call recordings were made by the Lancaster County Prison, where defendant Angel Roberto Serrano, Jr. was held on his state charges prior to his coming into federal custody.  The Lancaster County Prison maintains a system of recording all phone conversations made by prisoners.   These calls are digitally maintained in the telephone system maintained by the prison.  Prisoners are provided a unique Telephone Identification Number "TID" number that they must input into the telephone prior to engaging in conversations by phone in order to commence a call.   Prisoners are advised in the prison handbook that "Telephone Calls are Subject to Monitoring," and at each phone block lettering is printed on the wall, also advising the prisoners of this fact.  Moreover, at regular 3 minute intervals during the phone conversations, a recording interrupts the conversation advising the parties that the call may be monitored and recorded.

> 6.  The government has reviewed the content of these calls and submits that several of them are relevant to proving the charges in the indictments.  In particular, the identities of the parties to the conversations is established by admissions made during the course of the conversations by defendants Angel Roberto Serrano, Jr., Angela M. Serrano, and Lisa Serrano.

> 7.  At this time, the government is seeking to admit portions of twenty-two (22) conversations, indexed as follows:

*[All recordings have been loaded on to a CD-Rom which will be marked as Government Exhibit #1 at trial.  Each separate call will have a letter designation, such that the first call on the CD-Rom will be identified as Government Exhibit 1...etc.  The corresponding typed transcripts for the calls will be marked as Government Exhibit 1a...etc.]*

**Telephone Number (717) 392-7058**

| Exhibit # | Disc/Track | Description |
|---|---|---|
| 1 | Disc 4/Track 3 | Recording of January 31, 2008 call from Angel Serrano to Glenn Kramer and/or Tara Ortiz |
| 1a | Disc 4/Track 3 | Transcript of January 31, 2008 call |
| 2 | Disc 4/Track 4 | Recording of February 4, 2008 call from Angel Serrano to Glenn Kramer and/or Tara Ortiz |
| 2a | Disc 4/Track 4 | Transcript of February 4, 2008 call |
| 3 | Disc 6/Track 1 | Recording of February 7, 2008 call from Angel Serrano to Glenn Kramer and/or Tara Ortiz |
| 3a | Disc 6/Track 1 | Transcript of February 7, 2008 call |
| 4 | Disc 7/Track 2 | Recording of May 5, 2008 call from Angel Serrano to Glenn Kramer and/or Tara Ortiz |
| 4a | Disc 7/Track 2 | Transcript of May 5, 2008 call |
| 5 | Disc 7/Track 3 | Recording of May 6, 2008 call from Angel Serrano to Glenn Kramer and/or Tara Ortiz |
| 5a | Disc 7/Track 3 | Transcript of May 6, 2008 call |

**Telephone Number (717) 299-1973**

| Exhibit # | Disc/Track | Description |
|---|---|---|
| 6 | Disc 4/Track 2 | Recording of February 14, 2008 call from Angel Serrano to Brittany Walter |
| 6a | Disc 4/Track 2 | Transcript of February 14, 2008 call |
| 7 | Disc 4/Track 5 | Recording of February 19, 2008 call from Angel Serrano to Brittany Walter |
| 7a | Disc 4/Track 5 | Transcript of February 19, 2008 call |
| 8 | Disc 5/Track 2 | Recording of February 23, 2008 call from Angel Serrano to Brittany Walter |
| 8a | Disc 5/Track 2 | Transcript of February 23, 2008 call |

**Telephone Number (717) 468-5165**

| Exhibit # | Disc/Track | Description |
|---|---|---|
| 9 | Disc 9/Track 1 | Recording of October 22, 2007 call from Angel Serrano to Brittany Walter |
| 9a | Disc 9/Track 1 | Transcript of October 22, 2007 call |
| 10 | Disc 16/Track 3 | Recording of February 4, 2008 call from Angel Serrano to Brittany Walter |
| 10a | Disc 16/Track 3 | Transcript of February 4, 2008 call |
| 11 | Disc 16/Track 4 | Recording of February 5, 2008 call from Angel Serrano to Brittany Walter |
| 11a | Disc 16/Track 4 | Transcript of February 5, 2008 call |

**Telephone Number (717) 481-4882**

| Exhibit # | Disc/Track | Description |
|---|---|---|
| 12 | Disc 4/Track 1 | Recording of January 29, 2008 call from Angel Serrano to Angela Serrano |
| 12a | Disc 4/Track 1 | Transcript of January 29, 2008 call |
| 13 | Disc 5/Track 1 | Recording of February 7, 2008 call from Angel Serrano to Angela Serrano |
| 13a | Disc 5/Track 1 | Transcript of February 7, 2008 call |
| 14 | Disc 5/Track 2 | Recording of February 11, 2008 call from Angel Serrano to Angela Serrano |
| 14a | Disc 5/Track 2 | Transcript of February 11, 2008 call |
| 15 | Disc 5/Track 4 | Recording of February 17, 2008 call from Angel Serrano to Angela Serrano |
| 15a | Disc 5/Track 4 | Transcript of February 17, 2008 call |
| 16 | Disc 5/Track 5 | Recording of February 19, 2008 call from Angel Serrano to Angela Serrano |
| 16a | Disc 5/Track 5 | Transcript of February 19, 2008 call |

| 17 | Disc 5/Track 7 | Recording of February 25, 2008 call from Angel Serrano to Angela Serrano |
| 17a | Disc 5/Track 7 | Transcript of February 25, 2008 call |
| 18 | Disc 6/Track 4 | Recording of April 8, 2008 call from Angel Serrano to Angela Serrano |
| 18a | Disc 6/Track 4 | Transcript of April 8, 2008 call |
| 19 | Disc 7/Track 2 | Recording of May 19, 2008 call from Angel Serrano to Angela Serrano |
| 19a | Disc 7/Track 2 | Transcript of May 19, 2008 call |
| 20 | Disc 7/Track 3 | Recording of May 29, 2008 call from Angel Serrano to Angela Serrano |
| 20a | Disc 7/Track 3 | Transcript of May 29, 2008 call |
| 21 | Disc 11/Track 2 | Recording of August 24, 2008 call from Angel Serrano to Angela Serrano |
| 21a | Disc 11/Track 2 | Transcript of August 24, 2008 call |
| 22 | Disc 11/Track 3 | Recording of August 27, 2008 call from Angel Serrano to Angela Serrano |
| 22a | Disc 11/Track 3 | Transcript of August 27, 2008 call |

All of the conversations are relevant in establishing the identities of defendants Angel Roberto Serrano, Jr., Angela M. Serrano, and Lisa M. Serrano.  These conversations evidence the defendants' detailed knowledge of their criminal cases, grand jury and court listing dates.

**Conversations Between Angel and Angela Serrano**

8. During the January 29, 2008 (Disc 4/Track 1) call from Angel Serrano to Angela Serrano, Angela tells Angel that the detectives were just at her house, and then they went "to Dad's house" and then "to Lisa's job."  Angela also tells Angel, "And we were all subpoenaed to go to Philly to, in front of the grand jury and be questioned about your case." Angela also tells Angel that she called Brittany and told her that the police might be coming to

7

question her.  Angela tells Angel that the police asked her about a girl named Terri (Theresa Punchios), and whether she picked Angel up in Clearfield.  She also tells Angel that she was asked about how he got to Florida.  Angela tells Angel that on the day of the shooting, "I saw you a couple of times that day and you were with Brittany," noting that she remembers the day because it was "the day of Uncle Wayne's funeral."  Angela tells Angel that after she called Brittany, she called Lisa, and "then Dad called me freaking out."  Angela tells Angel that Michael Winters was the detective who came to her house, and Angel confirms that Detective Winters was the one who came to see him in Florida.  Angela repeatedly refers to Angel as her brother throughout the conversation.  Angel tells Angela to keep in "close contact with Brittany." Angela even gets Brittany on another line while she is speaking with Angel, and tells Brittany that her brother is on the phone.

9. During the February 7, 2008 (Disc 5/Track 1) call from Angel Serrano to Angela Serrano, Angel and Angela Serrano discuss Lisa Serrano and Glenn Kramer's testimony before the federal grand jury earlier that day.  Angela Serrano tells Angel Serrano that "Dad went first and was pretty quick," and discusses with Angel that Lisa was asked how Angel got out of Lancaster after the shooting incident.  Angela and Angel Serrano also discuss Brittany (Walter), and what she should tell the police about Angel's whereabouts on the date of the shooting.  They also discuss explaining to Brittany why Angel went to be with Nicole (Fedoruk) in Florida, and that Brittany might be asked about Angel going out to Clearfield to have sex with a girl (Theresa Punchios).

10. During the February 11, 2008 (Disc 5/Track 2) call from Angel Serrano to Angela Serrano, Angel Serrano tells Angela that Brittany (Walter) is supposed to get a job.

8

Angel and Angela discuss Tara, Dad and Lisa, and things the detectives said to them about a girl getting charged with perjury.  Angela Serrano tells Angel that she has to drive to "Philly" tomorrow (federal grand jury appearance), and Angel tells her, "I'm kind of scared about you going to Philly period, because I don't, I don't like them harassing you all."  Angel and Angela discuss Brittany testifying, and Angel tells Angela that he told Brittany, "As long as you know that you were with me the whole entire day from 10-11 o'clock in the afternoon/morning time until fucking 9-10 at night.  It don't matter what time we went to my sister's.  As long as you remember we went over there around dinner to get some cigarettes.  I needed cigarettes."  Angel also tells Angela that Jill (Nail), the lady from the YMCA that had been writing him, had sent him pictures of himself, Angela, Glenn and Lisa when they were little kids.  Angel also tells Angela that when he gets his discovery packet it will have all of their interviews in it, including Angela's, Dad's, Lisa's, and Tara's.  Finally, Angel speaks with a small male child on the phone and Angela tells the child that it is his "Uncle Angel."

      11.  During the February 17, 2008 (Disc 5/Track 4) call from Angel Serrano to Angela Serrano, Angel and Angela Serrano discuss Angela Serrano's trip to "Philly" (federal grand jury appearance).  Angela Serrano tells Angel that she was asked questions about Nicole, and about sending money to Angel when he was in Florida.  Angela tells Angel that she was asked why Angel had two girlfriends, specifically, Nicole (Fedoruk) and Brittany (Walter), and that she responded, "My brother has a lot.  I don't know, he, he's liked by the girls."  Angela Serrano relates that she was asked in Philadelphia whether she coached Brittany on what to say to the police, and Angel instructs Angela to call Brittany to find out "What's up?"

      12.  During the February 19, 2008 (Disc 5/Track 5) call from Angel Serrano to

9

Angela Serrano, Angel and Angela Serrano discuss Brittany getting questioned by the detectives, and Angela tells Angel that Brittany "had to go in front of the grand jury today." When Angel asks Angela what Brittany said in the grand jury, Angela responds that Brittany said she was with Angel all day on the day of the shooting. Angela also tells Angel that both she and Lisa tried to drive Brittany down to Philadelphia for her grand jury appearance, however, the detectives picked Brittany up "mad early," preventing them from doing so.

13.   During the February 25, 2008 (Disc 5/Track 7) call from Angel Serrano to Angela Serrano, Angel tells Angela Serrano, "You know I got like 5 minutes, Ang," explaining that he talked to Jill (Nail) for too long a time. Angel then tells Angela that he had Brittany call Jill the other day, and that Jill was mad because Brittany said that she was Angel's girl. Angela then warns Angel, "Like, do not fuck shit up with Brittany." Angel tells Angela, "Listen. Dad was trying to talk shit the other day saying that you're gonna get charged for lying to the, the, to the people in Philly." Angel tells Angela, "He said that you lied two weeks ago to them about some money and that..." Angela responds, Oh. Because I couldn't remember that I sent Nicole $60.00? At the end of the conversation Angel states, "I love you Angela."

14. During the April 8, 2008 (Disc 6/Track 4) call from Angel Serrano to Angela Serrano, Angela tells Angel, "Yo, dad's here." (*It should be noted that this conversation corresponds directly with Angel Serrano, Sr., having testified before the federal grand jury earlier in the day, and then traveling to stay with Angela and Lisa Serrano in Lancaster after his grand jury appearance.*) Angel asks his father how it feels to see Angela and Lisa, and his father responds that both Angela and Lisa are there with him. Lisa gets on the phone with Angel and confirms her present address, 409 Dogwood Lane, New Providence, 17560, with Angel. Lisa

speaks with Angel about her boyfriend and father of her children, Noel (Rivera).  Lisa calls

Angela to the phone by name, and puts her on the phone with Angel.  Angel instructs Angela to

call Jill (Nail) to make sure that she is not "stressin."  Angel refers to Angela as "Ang" twice at

the end of the call.

15. During the May 19, 2008 (Disc 7/Track 2) call from Angel Serrano to Angela

Serrano, Angela tells Angel that she met Jill (Nail), and that Jill is "like thirty-eight or somethin'.

Angela also tells Angel that he got a letter from a "chick" named Terri, who Angel tells her is a

witness that is being subpoenaed to appear at his trial.  Angel tells Angela to call his attorney's

office, and to speak with his paralegal Faith.  Angel tells Angela to tell Faith that she needs

Angel's attorney to get a hold of her ASAP, "because my brother said that you know what I'm

sayin', I'm one of the people he wants subpoenaed for...I actually seen him the day that this crime

happened..."

16. During the May 29, 2008 (Disc 7/Track 3) call from Angel Serrano to Angela

Serrano, Angela Serrano tells Angel Serrano that she has been trying to call Brittany (Walter) and

that she had just spoken with Jill (Nail).  Angel Serrano expresses his concern that Brittany may

be trying to "switch up" on him.  Angel and Angela Serrano discuss Nicole (Fedoruk) and the

information that she provided to the police about Angel Serrano going down to Florida, and

Angela Serrano tells Angel Serrano about her testimony in the grand jury about Nicole.  Angel

Serrano tells Angela Serrano, "I don't have nobody else to call, Ang.  I don't talk to Lisa.  I don't

talk to Glenn (Glenn Kramer, Jr.).  Dad and Tara (Glenn Kramer, Sr. And Tara Ortiz) don't

answer my calls."

17.  During the August 24, 2008 (Disc 11/Track 2) call from Angel Serrano to

11

Angela Serrano, Angela Serrano tells Angel Serrano that "Dad and Tara (defendants' stepfather Glenn Kramer and his girlfriend Tara Ortiz) got a paper saying they have...recorded conversations..."  Angel Serrano then responded, telling Angela Serrano that his lawyer had shown him "paperwork that came straight from the Feds sayin' that me and you been indicted." Later in that same conversation, Angel Serrano tells Angela Serrano, "But the charges they're chargin' me and you with is..one count, well me, one to commit perjury, you one count of committing perjury and I know where they're sayin' you committed perjury."  Angel and Angela Serrano then proceed to discuss the federal charges filed against them, and different things that Brittany (Walter) has told the authorities.

18.   During the August 27, 2008 (Disc 11/Track 3) call from Angel Serrano to Angela Serrano, Angel tells Angela, "But Ang, in the grand jury testimony Brittany, I have her statement right here.  She says flat out, cause they keep tryin' to get her to say that you, you, you conspirited to make her say some shit.  She was like, Angela, I don't even talk to Angela that much.  She never told me to say nothin."  Angela acknowledges that she and Angel are getting charged in the same six counts of an indictment.  Angela identifies herself as Angel's sister, and at the end of the conversation Angel states, "Alright, I love you Angela."

### Conversations Between Angel Serrano and Brittany Walter

19.   During the October 22, 2007 (Disc 9/Track 1) call from Angel Serrano to Brittany Walter, Angel Serrano tells Walter that he cannot wait to get out of prison because he brings out the best in Angela and Miguel (Angela Serrano's boyfriend).  Angel Serrano asks Walter if she spoke with Angela about "the thing I wrote her," and confirms that Walter and Angela are "both on point with the same thing."

12

20.     During the February 4, 2008 (Disc 16/Track 3) call from Angel Serrano to Brittany Walter, Angel Serrano asks Walter if she spoke to Angela, and if she knows whether Angela dropped clothes off for him at the prison.  Walter tells Angel that Angela said "that your dad was trippin' like, he was telling all them like, not to lie and stuff..."  Angel also tells Walter that he was on probation when he went to Florida, and that probation violated him when he left the state.  Angel also tells Walter, "...tell Angela I said to tell my, tell Angela to tell my dad he doesn't have to say nothin' at all.  He can just, he can just flat out plead the fifth."

21.     During the February 5, 2008 (Disc 16/Track 4) call from Angel Serrano to Brittany Walter, Angel Serrano asks Walter whether she has spoken with Angela (Serrano), and how Angela is doing.  Angel Serrano tells Walter to get together with Angela soon to discuss things "because they're (the police) probably gonna come fuck with you soon."  Angel Serrano tells Walter to call Angela as soon as she hangs up the phone with him.  Angel further talks about Walter speaking with his state court lawyer to discuss being his "alibi."  Serrano then reiterates things that Walter should tell the police about when she purportedly went with him on the date of the shooting when he "went to Queen Street to get weed," and when they went out to the Super 8 Motel.

22.     During the February 14, 2008 (Disc 4/Track 2) call from Angel Serrano to Brittany Walter, Walter tells Angel that she called "Ang," and that they talked and she understands everything.

23.     During the February 19, 2008 (Disc 4/Track 5) call from Angel Serrano to Brittany Walter, Angel Serrano tells Walter to hold on while he says goodbye to "Ang."  He then is overheard telling "Ang" to talk to Lisa, and to call his lawyer because his lawyer needs to talk

13

to her and to Brittany.  Angel then tells Walter that he has been mailing letters to her sister's

house, and refers to her by name several times.  Angel Serrano asks Walter what she told the

detectives when they interviewed her about him, and reminds her of what to say about what she

did with him on the date of the shooting.  Angel Serrano also talks about his sisters Angela and

Lisa.  Angel also tells Brittany, "you're the only one that really can free me of my charges.

Because you're the only I was with that day.  I mean, I was.  I, I seen Angela a couple times that

day."

        24.   During the February 23, 2008 (Disc 5/Track 2) call from Angel Serrano to

Brittany Walter, Angel Serrano tells Walter that he is sorry that the detectives harassed her.

Angel Serrano also gives Walter a telephone number for Jill (Nail) and tells her to call Jill.

Angel Serrano also confirms that Walter has not spoken with Angela recently.  Angel Serrano

tells Walter that he "is still worried about what happened down in Philly" (federal grand jury),

complains that only his sister Angela would tell him any of the questions they were asked, and

states that Lisa and his Dad would not tell him.  Angel Serrano and Walter also talk about what

Walter told the police about Angel going to Florida, and Angel confirms that Walter told the

police and the prosecutor that he sold drugs, admitting that he did, in fact, do so.

### Conversations Between Angel Serrano and Glenn Kramer and/or Tara Ortiz

        25.   During the January 31, 2008 (Disc 4/Track 3) call from Angel Serrano to

Glenn Kramer and/or Tara Ortiz, Tara Ortiz says "What's up Angel," and Angel says "How's it

going Tara?"  Angel then confirms with Tara that a couple of detectives went to speak with his

stepfather, Glenn Kramer, as well as Angela and Lisa.  Tara tells Angel that both his stepfather

and Angela have been subpoenaed to court.  Tara tells Angel that she told the detectives her last

14

name is Ott (maiden name).  Angel tells he wants her to call his attorney Michael Marinaro,

because "I want him to file all the proper motions now...Like I want to suppress a bunch of

stuff."

26.    During the February 4, 2008 (Disc 4/Track 4) call from Angel Serrano to

Glenn Kramer and/or Tara Ortiz, Tara says, "Hey Angel.  What's up?"  Angel tells Tara that he

talked to his girl earlier, and that she said she had talked to Angela the other day and that Angela

wanted Angel to call her because his dad "was like bugging out.  Telling her like don't lie."

Angel identifies Tara by name during the call, and Angel does likewise to her.  Tara tells Angel

that Angel's stepfather, Angela and Lisa are all going down to Philadelphia together to go to the

grand jury.

27.    During the February 7, 2008 (Disc 6/Track 1) call from Angel Serrano to

Glenn Kramer and/or Tara Ortiz, Angel asks Tara what happened when his step-dad and his

sisters testified on Tuesday.  Angel tells Tara that Angela had bought him clothes, but that none

of them fit.  Angel and Tara each refer to each other by name during the call.

28.    During the May 5, 2008 (Disc 7/Track 2) call from Angel Serrano to Glenn

Kramer and/or Tara Ortiz, Tara tells Angel, "I know where you got your gun and I know where

you hid it, so don't you threaten this fuckin' house anymore, because I'll fuckin' ...(inaudible)...

for life."

29.    During the May 6, 2008 (Disc 7/Track 3) call from Angel Serrano to Glenn

Kramer and/or Tara Ortiz, Angel and Tara both speak about the conversation from the previous

day, and both of them repeatedly refer to each other by name.

30.    The government intends to play the recordings aloud for the jury,

15

accompanied by a transcript of the conversations which will be simultaneously published to the jury.

31.     Defense counsel were all previously provided with copies of the CD-roms containing all of the referenced conversations recorded by the Lancaster County Prison officials, and the typed transcripts of those conversations which the government intends to introduce at trial.  Defense counsel has been requested to inform the government of any disagreements with the government's transcription of the recorded conversations and the government's identification of one or more of the speakers to all of the conversations as one of the defendants.

32.  The government avers that these recordings are authentic within the meaning of Rule 901, Fed. R. Evidence, and at a pre-trial hearing (if the court desires, under Rule 104) or at trial, it will offer the testimony of a Warden's Designee who is familiar with the Lancaster County Prison call monitoring system and City of Lancaster Police Detective Michael Winters, who has reviewed the content of the recordings and who is familiar with the voices of Angel Roberto Serrrano, Jr., Angela M. Serrano, Lisa M. Serrano, and Tara Ortiz, as well as the procedural history of the defendants' criminal cases, to make that showing of authenticity.

33.  Although, for the reasons set forth in the attached memorandum, the government does not believe that it is necessary, the government avers that and asks the Court to make a finding that:

a.  The recording devices used were capable of recording accurately the conversations;

b.  The operator of the recording device was competent;

c.  The recording is authentic and correct;

16

d.  There have been no changes in, additions to, or deletions from the recordings;

e.  The recording has been properly preserved;

f.  The speakers on the recordings, defendants Angel Roberto Serrrano, Jr., Angela M. Serrano, and Lisa M. Serrano, and witness Tara Ortiz, are properly identified, as reflected in the transcripts;

g.  The recording of the conversations by officials of the Lancaster County Prison was not within the meaning of "interception" under Title 18, U.S.C. Section 2510(5)(a)(ii) (the Federal Wiretap Act) and/or the defendants consented to the recording of the conversations; and

34.  The transcripts of the recording accurately represent the conversation on the recording and accurately identify the defendants as parties to the recorded conversations.

Wherefore, the government respectfully requests that this Court issue the attached order.

Respectfully yours,

LAURIE MAGID
*United States Attorney*

_____

MARK S. MILLER
Assistant United States Attorney

17

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | **Crim. Nos. 08-485; 08-601** |
| | : | |
| **ANGEL ROBERTO SERRANO, JR.** | : | |
| A/ka/ "Fly," | : | |
| **ANGELA M. SERRANO** | : | |
| **LISA M. SERRANO** | : | |

<u>**MEMORANDUM OF LAW**</u>

_____The government moves under Rules 104 and 901 of the Federal Rules of Evidence for a finding on the authentication of the tape recordings who transcripts are attached.  Rule 901(a), Fed. R. Evid., provides:

> The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

"All that is required is a foundation from which the fact finder could legitimately infer that the evidence is what its proponent claims it to be."  <u>In re: Japanese Electronic Products</u>, 723 F.2d 238, 285 (3d Cir. 1983), <u>rev'd on other grounds</u>, <u>Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corporation</u>, 475 U.S. 574 (1986).  This is a prima facie showing only and the evidence form which this finding is made must itself be admissible (in contrast to rulings under Rule 104(a)).  As the Third Circuit  Court of Appeals has noted, "The burden of proof for authentication is slight."  <u>McQueeney v. Wilmington Trust Co.</u>, 779 F.2d 916, 928 (3d Cir. 1985).  Once a prima facie showing has been made, if authenticity is disputed, the dispute is to be resolved by the jury.  <u>United States v. Goichman</u>, 547 F.2d 778, 784 (3d Cir. 1976); <u>United States v. McGlory</u>, 968 F.2d 309, 328-29 (3d Cir. 1992); <u>United States v. Reilly</u>, 33 F.3d 1396,

1404 (3d Cir. 1994).  Authenticity is a question separate from admissibility.  Once the court has

determined that a party has made a prima facie showing that the evidence is authentic, it must

then determine if the evidence is admissible--e.g., is it relevant?  <u>Japanese Electronics</u>, 723 F.2d

at 285-87; <u>In re Fine Paper Litigation</u>, 751 F.2d 562, 586 (3d Cir. 1984).

      Rule 901 provides "illustrations" of a few examples of such authentication.   Rule

901(b) states that "By way of illustration only, and not by way of limitation, the following are

examples of authentication or identification conforming with the requirements of this rule:

> Identification of a voice, whether heard firsthand or through mechanical or electronic
> transmission or recording, by opinion based upon hearing the voice at any time under
> circumstances connecting it with the alleged speaker.

Fed. R. Evid. 901(b)(5).

> Telephone conversations, by evidence that a call was made to the number assigned at the
> time by the telephone company to a particular person or business, if (A) in the case of a
> person, circumstances, including self-identification, show the person answering to be the
> one called...

Fed. R. Evid. 901(b)(6).

      The government submits that evidence from a Warden's Designee of the

Lancaster County Prison of how the phone call recordings are collected and maintained and how

an inmate uses his unique Telephone Identification Number ("TID") to place a call and the

content of the conversations (i.e., the speaker's familiarity with the procedural history of his/her

criminal case, his/her comments on the evidence produced in the case, and the speaker's intimate

knowledge of details of the case more than establish, for purposes of Rule 901, that the speakers

in these conversations are the defendants and witness Tara Ortiz.

      The government submits that the requirements of <u>United States v. Starks</u>, 515

2

F.2d 112, 121, n. 11 (3d Cir. 1975), are inconsistent with the Rules of Evidence which came into

force a few months after the <u>Starks</u> decision.  The government is prepared to meet the <u>Starks</u>

requirements at a hearing for that purpose; however, because the Federal Rules of Evidence were

adopted after <u>Starks</u>, and because the law of authentication under the Rules is inconsistent with

<u>Starks</u>, the government submits that <u>Starks</u> is no longer the law.[1]  Moreover, to the extent that

<u>Starks</u> suggests that a particular formulation must be followed to establish authenticity of tape

records, it is not valid.

      To be sure, in some cases the factors listed in <u>Starks</u> may remain relevant to the

preliminary determination.  This is particularly so in a case in which the participants to the

conversation are not available, and the government must establish the identity of the persons on

the recording and the absence of any malfunction or alteration.  See Rule 901(b)(9) (evidence

may be authenticated by proof "describing a process or system used to produce a result and

showing that the process or system produces an accurate result").

      The government notes the phone conversations, as recorded by the Philadelphia

Prison System as part of their routine monitoring of such calls, are exempt from the definition of

"intercept" for purposes of the Federal Wiretap Act, Title 18, U.S.C., Section 2510 et seq.

Section 2510(4) defines "intercept' to mean the aural or other acquisition of the contents of any

wire, electronic, or oral communication through the use of any electronic, mechanical, or other

---

[1] Starks' requirement of a showing of "clear and convincing evidence' is no longer good law with respect to the preliminary finding under Rule 901 to be made by the trial court.  The burden presently imposed by Rule 901 is the same as that applicable to factual determinations made by a judge prior to permitting the admission of evidence, under Rule 104.  Thus, the Starks rule actually (and inappropriately) imposes a higher burden for admission of recordings than currently applies for admission of any other type of evidence.

device.  Section 2510(5) defines such an "electronic, mechanical, or other device" to mean any device or apparatus which can be used to intercept such communications other than (a) any telephone...equipment or facility (ii) being used by a provider of wire or electronic communication service in the ordinary course of its business, or by an investigative or law enforcement officer in the ordinary course of his duties."   In United States v. Lewis, 406 F.3d 11 (1st Cir. 2005), the Court of Appeals stated that recordings made pursuant to routine prison practice of monitoring all outgoing inmate telephone calls under a policy of which inmates were informed did not constitute "interception" within the meaning of the Federal Wiretap Act, 18 U.S.C, Section 2510(5)(a)(ii); see also United Sates v. Vasta, 649 F. Supp. 974 (S.D.N.Y. 1986); United States v. Clark, 651 F. Supp 76 (M.D. Pa. 1986).

Even if the recordings are subject to the Federal Wiretap Act, the defendant impliedly consented to monitoring and recording in light of his use of the prison phone after having notification of  monitoring/recording through various sources.   Here, the prison handbook distributed to prisoners indicates that phone calls may be monitored.  The placard placed by the telephone at the prison advises the same.  Moreover, during the calls the parties are warned that conversations may be monitored or recorded.  Various courts have held that use of prison phones under such circumstances is deemed to constitute implied consent.  See, e.g., United States v. Amen, 831 F.2d 373 (2d Cir. 1987); United States v. Peoples, 71 F. Supp.2d 967 (W.D. Mo. 1999); People v. Windham, 50 Cal. Rptr. 3d 768 (1st Dist. 2006).

4

In this case, as set forth in the accompanying motion, all of the factors outlined in

Starks are met in this case and the recordings of the conversations should be admitted at trial.

Respectfully yours,

LAURIE MAGID
*United States Attorney*


_____

MARK S. MILLER
Assistant United States Attorney

5

CERTIFICATE OF SERVICE

        I hereby certify that a true and correct copy of the foregoing Government's Motion

To Admit Phone Call Recordings has been sent by electronic filing to:


Jose L. Ongay, Esquire             Michael P. Gottlieb, Esquire
521 S. Second Street               Vangrossi & Recchuiti
Philadelphia, PA 19147          319 Swede Street
*Counsel for Angel Serrano*      Norristown, PA 19401-4801
                                    *Counsel for Lisa Serrano*

J. Michael Farrell, Esquire
718 Arch Street, Suite 402N
Philadelphia, PA 19106
*Counsel for Angela Serrano*


May 19, 2009

6

7